THIRD DEPARTMENT, AUGUST, 1996

(August 1, 1996)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CARL TRICHILO, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LEON SWEET, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VICTOR KOSIBA, Appellant. [646 NYS2d 898] —Mikoll, J. P. Appeal from a judgment of the County Court of Albany County (Breslin, J.), rendered November 18, 1994, upon a verdict convicting defendant Carl Trichilo of the crime of assault in the second degree.

Appeal from a judgment of the County Court of Albany County (Breslin, J.), rendered November 18, 1994, upon a

verdict convicting defendant Leon Sweet of the crime of assault in the second degree.

Appeal from a judgment of the County Court of Albany County (Breslin, J.), rendered November 18, 1994, upon a verdict convicting defendant Victor Kosiba of the crimes of assault in the second degree and menacing in the second degree.

On October 5, 1993 defendants Carl Trichilo, Leon Sweet, Anthony Vecchio* and Victor Kosiba were indicted in a two-count indictment returned by an Albany County Grand Jury charging each of the four defendants with assault in the first degree and Victor Kosiba with menacing in the second degree.

The charges arose out of an altercation that occurred on June 14, 1993 at Lincoln Park in the City of Albany when complainant Donald Stewart was struck on and about his head and body sustaining lacerations, contusions and other injuries. After a joint jury trial, defendants were found guilty of the lesser included crime of assault in the second degree and, in addition, Kosiba was also found guilty of menacing in the second degree. Trichilo and Kosiba were each sentenced to indeterminate terms of imprisonment of $2^1/_3$ to 7 years. Sweet was sentenced as a second felony offender to $3^1/_2$ to 7 years in prison and Kosiba was also sentenced to a one-year term on his menacing conviction, to be served concurrently with his sentence on the assault count.

Defendants advance multiple arguments for reversal of their convictions which we have considered and find to be without merit. The judgment of conviction as to each count should therefore be affirmed.

Kosiba's claim that the warrantless search of his Camaro automobile (from which weapons were seized including knives and a hammer) was without probable cause and a violation of his constitutional right against unreasonable searches and seizures is rejected. Evidence introduced at the suppression hearing supported County Court's finding of probable cause and justified the warrantless search of the Camaro (see, People v Milerson, 51 NY2d 919, 921; People v Francine CC., 112 AD2d 531, 534).

Albany Police Sergeant Paul Pettit testified at a suppression hearing that he received a call that a group of people were fighting with bats and clubs outside Lincoln Park. On his approach to an entranceway to the park, he observed three or four males approaching the sidewalk. Two males were next to

---

* Vecchio is not an appellant herein. "Defendants" as used hereinafter includes only Trichilo, Sweet and Kosiba.

a Camaro and two were inside a Corvette. Pettit observed that one of the passengers in the Corvette (the complainant) was bloody. Complainant told Pettit that the male next to the Camaro, identified as Kosiba, had a gun. Pettit also stated that Kosiba was then held to the ground by other police officers. Paul Gentile, who was with complainant at the scene, informed Pettit that he saw Kosiba drop an item into the Camaro. Pettit further testified that another officer retrieved a handgun upon a search of Kosiba.

Police Officer John Monte testified that he was called to Lincoln Park upon a report of a fight, possibly with knives, in the park. Complainant told him there that Kosiba may have a gun and possibly placed it in the Camaro. Monte looked into the Camaro and saw a knife and ballpeen hammer, but no gun.

Patrol Officer Scott Gavigan was another officer who responded to a call relating to an incident at Lincoln Park. He observed Kosiba laying face down, searched him, found the gun on his person and seized it. Thus, the search of Kosiba's car and the seizure of the knife, ballpeen hammer and gun were proper and the motion to suppress properly denied.

Sweet's contention that County Court erred in its *Sandoval* ruling (*see, People v Sandoval*, 34 NY2d 371), which permitted the prosecution to inquire into his 1979 conviction of burglary in the second degree, including its underpinnings, and his 1988 conviction for driving while intoxicated, is without merit. The 1979 burglary conviction concerns thievery and, as such, was "relevant to defendant's credibility" (*People v Hemingway*, 152 AD2d 818, 820, *lv denied* 74 NY2d 810; *see, People v Ashley*, 145 AD2d 782). Sweet's claim that the nearly 15-year-old conviction was too remote in time is rejected. County Court could reasonably conclude that it was still relevant on the issue of Sweet's credibility (*see, People v Walker*, 83 NY2d 455, 459; *People v Tucker*, 165 AD2d 900, 901). Sweet's then six-year-old conviction for driving while intoxicated was also some evidence that Sweet was willing "to deliberately further his self-interest at the expense of society" (*People v McAleavey*, 159 AD2d 646; *see, People v Costello*, 112 AD2d 478, 479-480) and, thus, County Court did not abuse its discretion in its *Sandoval* rulings.

The argument of Sweet and Kosiba that County Court improperly refused to give a missing witness charge as to a number of witnesses lacks merit. A court is required to give a missing witness charge when it is demonstrated that an opposing party has failed to produce a witness who is "knowledgeable about a material issue upon which evidence is already in

the case; that the witness would naturally be expected to provide noncumulative testimony favorable to the party who has not called him, and that the witness is available to such party" (*People v Gonzalez*, 68 NY2d 424, 427). Witness Patrick Mullen made the initial call to the police to report a fight at Lincoln Park. There was no showing that his testimony would be material and, in fact, it was only cumulative of what was in the radio transmissions. The charge was not required as to him.

Witness John Trendall provided a written statement to Pettit on the evening of the fight, identifying Doug Terry as a potential defendant. Trendall's testimony would only be cumulative to the statement of Keith Stewart given to the police which identified Doug Terry as a participant in the crimes. Witness Elizabeth Contrafeld was another witness who had viewed the altercation and, thus, County Court could properly rule that her testimony would also be cumulative.

The testimony of complainant's psychologist that complainant complained of vertigo, nightmares and posttraumatic syndrome disorder were all brought to County Court's attention through cross-examination of complainant and, thus, were also properly held to be cumulative and not material to the People's case.

Finally, witness Richard Vincent was one of several police officers present at the scene of the incident and his testimony could also have been ruled to be merely cumulative. Consequently, County Court did not err in refusing to issue a missing witness charge as to any of these several potential witnesses.

Defendants' claim that they were denied effective assistance of counsel is without merit. We find that here " 'the evidence, the law, and the circumstances of [this] case, viewed in *totality and as of the time of the representation*, reveal that the attorney provided meaningful representation' " (*People v Flores*, 84 NY2d 184, 187, quoting *People v Baldi*, 54 NY2d 137, 147 [emphasis supplied by *Flores*]; *see, People v Linderberry*, 215 AD2d 867, 870, *lv denied* 86 NY2d 844). The record indicates that Sweet, Kosiba and Trichilo were each represented by different counsel during the arraignment phase of the proceedings and not by the same counsel, attorney Joseph McCoy, trial counsel for Kosiba, as Sweet and Kosiba allege. There is no evidence that there was a conflict of interest created by McCoy's representation, in his capacity as an Assistant Public Defender, of Albany Police Officer Richard Vincent on another matter as Vincent was not a witness for the People at any

time in this matter and, thus, there was no prohibited simultaneous representation of Vincent and Kosiba by McCoy here (*see, People v Wandell*, 75 NY2d 951). Furthermore, McCoy represented Kosiba as a private attorney and not in his capacity as an Assistant Public Defender.

Defendants' other claims of the appearance of a conflict of interest with respect to the representation by McCoy and Michael Magguilli, attorney for Trichilo, are also without merit. Sweet and Kosiba have failed to demonstrate that " 'the conduct of [the] defense was *in fact affected* by the operation of the conflict of interest' " (*People v Jordan*, 83 NY2d 785, 787, quoting *People v Alicea*, 61 NY2d 23, 31 [emphasis supplied by *Jordan*]; *see, People v Recupero*, 73 NY2d 877, 879). Sweet's and Kosiba's claim, that since both McCoy and Magguilli work for the Public Defender's office a potential conflict is presented, is without merit. Both attorneys were privately retained in this case. Nor do we find that McCoy's representation of Kosiba or Magguilli's representation of Trichilo was deficient viewing the totality of the circumstances of the case (*see, People v Linderberry, supra*, at 870).

Trichilo's claim that his conviction for assault in the second degree was not supported by legally sufficient evidence and was against the weight of the evidence fails. The record reveals that the evidence presented at trial, viewed in the light most favorable to the People (*see, People v Thompson*, 72 NY2d 410, 413), demonstrates that Trichilo, with the intent to do so, caused physical injury to complainant with a hammer (*see,* Penal Law § 120.05 [2]).

The trial evidence established that Trichilo, together with the other defendants, challenged complainant to a fight and that complainant agreed to a "fair fight" with Trichilo at Lincoln Park. On the night of June 14, 1993, defendants met complainant at the park and while walking to the appointed site, Trichilo jumped on complainant from behind, complainant responded and punched Trichilo once or twice and then was struck with a hammer blow by Sweet, followed with a hammer blow by Vecchio. Complainant managed to wrest a hammer from Sweet's hand. Trichilo then tackled complainant and complainant tried to cover up as defendants beat on him with hammers and with a blackjack which Trichilo had. Trichilo recovered a hammer and continued to hit complainant with it. The assault left complainant with black and blue marks all over his arms, back and head. He also suffered from a massive hemorrhage, headache, dizziness and bleeding in several places, and required 14 staples for one laceration. Thus,

there exists "[a] valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury * * * and as a matter of law satisfy the proof and burden requirements for every element of the crime charged" (*People v Bleakley*, 69 NY2d 490, 495 [citation omitted]). The evidence is clearly sufficient to support Trichilo's conviction for assault in the second degree (*cf.*, *People v Brown*, 187 AD2d 872, *lv denied* 81 NY2d 785).

Viewing the evidence in a neutral light (*see*, *People v Rose*, 215 AD2d 875, 877, *lv denied* 86 NY2d 801; *People v Carthrens*, 171 AD2d 387, 392), the circumstances surrounding the altercation were properly placed before the jury and after weighing the competing inferences that may have been drawn therefrom, the jury properly exercised its fact-finding functions. Thus, its verdict convicting Trichilo should be sustained (*see, e.g.*, *People v Rua*, 198 AD2d 311, 312; *People v Garris*, 196 AD2d 724, 725, *lv denied* 82 NY2d 895). The verdict clearly is not against the weight of the evidence.

We find Sweet's and Kosiba's argument that their respective sentences were harsh and excessive without merit and decline to disturb them (*see*, *People v Ambrose*, 160 AD2d 1097, 1097-1098, *lv denied* 76 NY2d 784; *People v Mackey*, 136 AD2d 780, *lv denied* 71 NY2d 899).

We have considered defendants other arguments for reversal and find them without merit.

Mercure, Crew III, Yesawich Jr. and Peters, JJ., concur. Ordered that the judgments are affirmed.