# State of New York
# Court of Appeals

MEMORANDUM

This memorandum is uncorrected and subject to revision before publication in the New York Reports.

No. 33
The People &c.,
   Respondent,
  v.
Fidel Vega,
   Appellant.

Arielle I. Reid, for appellant.
David P. Stromes, for respondent.

MEMORANDUM:

The order of the Appellate Division should be affirmed.

Defendant was charged with several crimes for beating the victim with a belt, including two counts of assault in the second degree. One count of assault in the second

degree required the People to prove that with intent to cause physical injury to the victim, defendant caused such injury by means of a dangerous instrument, i.e., the belt with a metal buckle (see Penal Law § 120.05 [2]).  Defendant raised a justification defense at trial, on the basis of his proffered defense of a third person (see generally Penal Law § 35.15).  The trial court instructed the jury on the justified use of non-deadly physical force in connection with the lesser included offense of assault in the third degree, which does not contain a dangerous instrument element (see Penal Law § 120.00 [1]).  At the People's request, the court also instructed the jury that if it found beyond a reasonable doubt that defendant used a dangerous instrument, then it should apply the legal rules pertaining to the justified use of deadly physical force (see generally Penal Law § 35.15 [2]).

The Penal Law defines "[d]eadly physical force" as "physical force which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury" (Penal Law § 10.00 [11]).  A "[d]angerous instrument" is defined as "any instrument, article, or substance . . . which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or other serious physical injury" (id. § 10.00 [13]).  Defendant argues that the statutory definitions, while similar, are not identical and that a jury may convict a defendant of a crime containing a dangerous instrument element without necessarily concluding that the defendant used deadly physical force.

Although it would be a rare case—particularly where, as here, the charge is assault in the second degree—we do not rule out the possibility that a defendant may be entitled to a jury instruction on the justified use of non-deadly (or "ordinary") physical force, even

though the defendant is charged with a crime containing a dangerous instrument element (see e.g. People v Powell, 101 AD3d 1369, 1371-1373 [3d Dept 2012], lv denied 21 NY3d 1019 [2013]; People v Griffith, 254 AD2d 753, 753-754 [4th Dept 1998]; People v Ogodor, 207 AD2d 461, 461-463 [2d Dept 1994]).  There is no per se rule regarding which justification instructions are appropriate based solely on the fact that the defendant has been charged with second-degree assault with a dangerous instrument.  Instead, as in every case where the defendant requests a justification charge, trial courts must view the record in the light most favorable to the defendant and determine whether any reasonable view of the evidence would permit the factfinder to conclude that the defendant's conduct was justified, and, if so, which instructions are applicable (see People v Petty, 7 NY3d 277, 284 [2006]; People v McManus, 67 NY2d 541, 549 [1986]).[1]

Under the particular circumstances of this case, the jury instruction does not require reversal (see People v Valentin, 29 NY3d 57, 61 [2017]).  Viewing the record in the light most favorable to defendant, there is no reasonable view of the evidence that defendant merely "attempted" or "threatened" to use the belt in a manner readily capable of causing death or serious physical injury (Penal Law § 10.00 [13]) but that he did not "use" it in that manner (id. § 10.00 [11]).

---

[1] If a trial court determines, viewing the record in the light most favorable to the defendant, that there is no reasonable view of the evidence that the defendant used anything less than deadly force, the court may instruct the jury solely on the justified use of deadly physical force if that instruction is warranted, in keeping with the "well-settled principle that a justification charge is not warranted where there is no reasonable view of the evidence to support it" (Powell, 101 AD3d at 1373; see e.g. People v Garcia, 59 AD3d 211, 212 [1st Dept 2009], lv denied 12 NY3d 853 [2009]).

Defendant's contentions regarding the legal sufficiency of the evidence pertaining to the two counts of burglary in the first degree are partially unpreserved[2] and the remaining are without merit. Defendant preserved his contention regarding defense counsel's attempt to cross-examine the victim with respect to her alleged mental health history, but under the circumstances of this case, we conclude that the trial court did not abuse its discretion as a matter of law.

---

[2] Specifically, defendant failed to preserve his contention that the victim's bedroom was not a "separately secured or occupied" unit within the meaning of Penal Law § 140.00 (2) (see People v Hawkins, 11 NY3d 484, 492 [2008]).

People v Fidel Vega

No. 33

GARCIA, J. (concurring):

I agree with the majority's conclusion that, because the jury convicted defendant of second-degree assault by means of a dangerous instrument (Penal Law § 120.05 [2]), it necessarily determined that defendant employed deadly, rather than ordinary, physical

- 1 -

force, and therefore the trial court's instruction was proper. I do not, however, endorse the majority's suggestion that a jury may convict a defendant of second-degree assault by means of a dangerous instrument while simultaneously concluding that the defendant used less than deadly physical force. Not only is that proposition dubious as a legal matter, it sweeps beyond the facts presented by this appeal.

The Penal Law defines "deadly physical force" as "physical force which, under the circumstances in which it *is used*, is readily capable of causing death or other serious physical injury" (Penal Law § 10.00 [11] [emphasis added]). A "dangerous instrument," by contrast, is defined as "any instrument, article, or substance . . . which, under the circumstances in which it *is used, attempted to be used or threatened to be used*, is readily capable of causing death or other serious physical injury" (id. § 10.00 [13] [emphasis added]). Given the textual discrepancy between the two statutes, defendant asserts that a defendant convicted of second-degree assault with a dangerous instrument might still be entitled to a jury instruction on the justified use of non-deadly physical force.

That analysis, however, omits the final, critical step: plugging the "dangerous instrument" definition into the assault statute. In order to convict defendant of second-degree assault, the jury was required to find not only that defendant's belt constituted a "dangerous instrument," but also that defendant's use (or "attempted" or "threatened" use) of the dangerous instrument constituted second-degree assault (Penal Law § 120.05 [2]). That inquiry, in turn, required the jury to conclude that, with intent to cause physical injury, defendant actually "cause[d]" physical injury "by means of . . . a dangerous instrument"

(Penal Law § 120.05 [2] [emphasis added]).  In other words, to commit second-degree assault under Penal Law § 120.05 (2), a defendant must necessarily employ a "dangerous instrument"—an instrument "readily capable of causing death or other serious physical injury" (Penal Law § 10.00 [13])—in a manner that ultimately caused physical injury (Penal Law § 120.05 [2]).  That, it seems, would inevitably constitute deadly physical force.

Moreover, we have repeatedly made clear that the Penal Law's "deadly physical force" provision is not concerned with the "consequences of [a] defendant's conduct or what he intended," but rather with "the nature of the risk created" (People v Magliato, 68 NY2d 24, 29 [1986]).  In Magliato, for instance, we held that the defendant's defensive conduct—"intended merely to scare off an assailant or to keep him at bay"—placed the assailant in "such imminent danger of grave bodily injury or death" that it constituted "deadly physical force" (id. at 26).  Put differently, even where a defendant merely "attempt[s]" or "threaten[s]" to use a dangerous instrument, a jury would presumably find that the defendant employed deadly physical force by virtue of the instrument's *capacity* to imminently cause death or other serious physical injury.

As a result, it would be the rare case indeed where a defendant commits second-degree assault by means of a dangerous instrument, yet somehow does not employ deadly physical force.  Tellingly, the majority offers no example of this seemingly impossible

scenario.[1]  While we need not foreclose the possibility that such a case might theoretically arise, I would certainly not foreclose the possibility that, in reality, it never will.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Order affirmed, in a memorandum.  Chief Judge DiFiore and Judges Rivera, Stein, Fahey, Wilson and Feinman concur.  Judge Garcia concurs in result in an opinion.

Decided May 7, 2019

---

[1] In fact, the majority appears to apply a "per se rule" that a defendant convicted of second-degree assault by means of a dangerous instrument must necessarily employ deadly physical force, at least where "there is no reasonable view of the evidence that [the] defendant merely 'attempted' or 'threatened'" to use the dangerous instrument (majority op at 3).